PEOPLE ex rel. SHAY v. McCORMACK, Borough President.

(Supreme Court, Appellate Division, Second Department. May 28, 1915.)

MANDAMUS ☜92—SUBJECTS OF RELIEF—DISCRETION OF REFUSAL—REJECTION OF BID.

Under New York City Charter (Laws 1901, c. 466) § 419, providing that, if the borough president shall not deem it for the interests of the city to reject all bids, he shall award the contract to the lowest bidder, that official has an implied authority to reject all bids, and the courts cannot, by mandamus, compel him to rescind his rejection of the bids and award the contract to the lowest bidder, though he gives no reason for his action, or even acts in bad faith.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 199, 204; Dec. Dig. ☜92.]

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Special Term, Richmond County.

Mandamus by the People, on the relation of James P. Shay, against Charles J. McCormack, as President of the Borough of Richmond. From an order granting relator's motion for an alternative writ of mandamus, the defendant appeals. Reversed, and motion denied.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE-TON, and PUTNAM, JJ.

William E. C. Mayer, of New York City (Terence Farley, of New York City, on the brief), for appellant.

J. L. Farrell, of New York City, for respondent.

THOMAS, J.  This is an appeal from an order granting a motion for an alternative writ of mandamus, directed to the president of the borough of Richmond, requiring him to rescind and withdraw the rejection of bids opened December 22, 1914, for shoeing the horses of stable A of the street cleaning bureau in that borough for the year 1915, and accept the bid of the relator.  The charter of the city of New York (section 419) provides that:

"If a borough president or the head of a department shall not deem it for the interest of the city to reject all bids, he shall, without the consent or approval of any other department or officer of the city government, award the contract to the lowest bidder."

Conversely, if the officer deem it for the interest of the city to reject all bids, he shall do so.  But the present order contemplates a writ that may take from the president of the borough the authority to reject all bids and compel him to award the contract to the plaintiff, who was the lowest bidder.  The statute implies that he may reject all bids; the court says that upon some state of facts he may not.  The statute endows him with the power to consider and to decide, in view of the public interest; the court asserts that it is invested with a superior ability, that enables it to fathom the moral status of the officer, to test the validity of his mental processes, and, subverting his determination, constrain him to adopt as his own the thoughts of the court and the conclusions to which they lead the court.  So the officer becomes one who must have reasons for his rejection of bids; he must collect and preserve them in such form that he can lay them before the court; they must be so logical as to exact its approval.  Otherwise, the court will reject them and substitute its own reasoning, founded upon such apparent facts as are presented to it, and constrain the officer to be its agent to put in force its determination founded thereon.  The mere suggestion of such an attitude on the part of the court compels the immediate rejection of the present application.

But the relator may answer that the proposition is carried too far, and that the court will not exercise such power, unless it appear that the president of the borough has been induced to act through some moral obliquity.  In that case the argument would be this: The president of the borough is authorized to decide whether all bids shall be rejected.  If he decides with moral honesty, the court will not review his mental processes and resulting decision.  If, however, he is ruled by an immoral motive, the court will examine his determination and the

facts as they come to it, and, as suits its judgment, will compel him to reject all bids, or to accept the lowest bid. Thus the court would be substituted to exercise the power granted by statute to the president of the borough, if it deems the officer morally disqualified or errant in political ethics. In brief, the court would qualify itself for discharging a statutory duty placed upon an official by disqualifying him by reason of perverse motive. An attentive study of the decisions fails to discover such prerogative of the court, based upon the moral feebleness or degeneracy of the person to whom the statute consigns the welfare of the city in the matter under consideration. If, now, the evidence of bad faith by the president of the borough be sought in the papers, it is tendered by the relator's information and belief that his competitor in bidding, or some third person, has uttered something which is imputable to the president of the borough, although that officer was not privy to the statement or responsible for the words of the speaker. It is shown that the president of the borough did not reject the bids until January 30, 1915, when nearly a twelfth of the year during which the service should have been rendered had expired. That would seem to need explanation, but it should be made to whomsoever the president is amenable. No good purpose would be subserved by making it to the court, as it has no power to take cognizance of it in the present proceeding.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.

---

PIERCE v. McDONALD. (No. 7372.)

(Supreme Court, Appellate Division, First Department. June 4, 1915.)

1. JOINT ADVENTURES &1—WHAT CONSTITUTES—SHARING IN PROFITS.

That certain persons contribute to a fund to be deposited with a municipal corporation as security for a bid to build a subway does not make them joint adventurers, where they render no services, have no voice in the making of the contract or in its performance, but are merely to share in the profits.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 1; Dec. Dig. &1.]

2. JOINT ADVENTURES &5—ACCOUNTING—BURDEN OF PROOF.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 7; Dec. Dig. &5.]

Appeal from Special Term, New York County.