The People of the State of New York, Appellant, *v.* Tilman J. Karr, Doing Business as Troy Contracting Company, et al., Respondents.

Contract — highways — statutes — line between mandatory and directory statutes — section 148 of Highway Law requiring acquisition of land for highways prior to advertisement for proposals for construction work not mandatory — when contractor may abandon work for failure to acquire land — action to recover cost of completing work abandoned by contractor on ground of failure to acquire land — erroneous dismissal of complaint on ground that acquisition of land was condition precedent to contract — issue to be tried.

1. The line between mandatory and directory statutes cannot be drawn with precision. It is purely a question of intention. Courts must seek the legislative design having in mind the public policy to be promoted and the results that would follow one or the other conclusion.

2. The provision of section 148 of the Highway Law as it existed in 1919 that where a highway is to be improved and where it deviates from the line of a highway already existing, " the board of supervisors of the county where such highway is located, shall acquire land for the requisite right of way prior to the advertisement for proposals," is not mandatory. It was intended to provide for action by the local officials for the benefit both of the State and the contractor. Both were to be assured before the contract was made that the work might proceed without unreasonable interference or delay. In the event of a breach of the official duty imposed on the supervisors they may be personally liable to the State for any damages caused by their neglect if there be neglect and if the contractor is materially impeded because the right of way has not been acquired he may abandon his contract unless before he begins actual work title is acquired or lack of title does not seriously interfere with its prosecution or upon notice to the State the defect is promptly remedied.

3. In an action by the State to recover the additional cost of completing the reconstruction of a highway, abandoned by the contractor, where it appeared that certain parcels of land required for the highway had not been and were not acquired until some time after the contractor had entered upon his work, it was error to dismiss the complaint on the ground that the acquiring of all necessary

land was a condition precedent to advertisement for and acceptance of proposals and the execution of the contract, that the contract was void and neither the contractor nor his surety could be held liable for failure to complete the same. The issue should be tried as to whether or not because of the failure to perform the statutory provisions imposed upon the officials the contractor was so impeded in his work that he was reasonably entitled to abandon his contract and in fact did abandon it for that reason.

People v. Karr, 211 App. Div. 633, reversed.

(Argued May 13, 1925; decided June 2, 1925.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 14, 1925, unanimously affirming a judgment in favor of defendants entered upon a verdict directed by the court.

Albert Ottinger, Attorney-General (Charles E. McManus and John H. Machan of counsel), for appellant. The defendants' technical defense is not available to them. (Schunnemunk Const. Co. v. State, 116 Misc. Rep. 770; Brennan Const. Co. v. State, 117 Misc. Rep. 816; Olmsted v. Dennis, 77 N. Y. 378; Matter of Worcester County, 102 Fed. Rep. 808, 815; Thompson v. Bank, 146 U. S. 240; Moore v. City of Albany, 98 N. Y. 396.) Section 148 is directory, rather than mandatory. There was a substantial compliance with the provisions of the statute prior to advertisement for proposals. (People ex rel. Lyon Co. v. McDonough, 173 N. Y. 181; Matter of N. Y. P. E. Public School, 47 N. Y. 556; People ex rel. Lefevre v. Supervisors, 34 N. Y. 268; City of Kingston v. Terry, 24 Misc. Rep. 616; Stevenson v. Mayor, 3 T. & C. 133; Pond v. Negus, 3 Mass. 230; People v. Buffalo Fish Co., 164 N. Y. 93; People ex rel. Carter v. Rice, 135 N. Y. 473; Matter of Meyers, 209 N. Y. 386.)

Arthur E. Rose for respondents. The provisions of section 148 of the Highway Law, as amended by chapter 261 of the Laws of 1917, with respect to the acquiring

of land for right of way, is mandatory and creates a condition precedent to the execution of a valid contract. (*Hartford* v. *Hartford Electric Light Co.,* 65 Conn. 324; *Schumm* v. *Seymour,* 24 N. J. Eq. 153; *Beckwith* v. *New York,* 121 App. Div. 462; *Williams* v. *New York,* 118 App. Div. 756; *Dady* v. *New York,* 65 Misc. Rep. 382; *Bradley* v. *United States,* 98 U. S. 104; *Hooe* v. *United States,* 218 U. S. 322; *Donovan* v. *New York,* 33 N. Y. 291; *Walton* v. *Mayor, etc.,* 26 App. Div. 76; *Keane* v. *New York,* 88 App. Div. 542.)   The statute was enacted primarily for the benefit of the contractor. (*N. P., H. & P. Traction Co.* v. *Ulster Co.,* 202 App. Div. 234; *Konner* v. *State,* 227 N. Y. 478; 180 App. Div. 837; *Leavitt* v. *United States,* 34 Fed. Rep. 623.)

ANDREWS, J.   On August 5, 1919, Tilman J. Karr entered into a contract with the State of New York for reconstructing a county highway in Rensselaer county. The National Surety Company gave the usual bond. The contractor began the work referred to but subsequently abandoned it before its completion.   The work was relet and finished at an additional cost to the State of over $17,000.   To recover this sum the present action is brought against the contractor and his bondsman.

Section 148 of the Highway Law as it existed in 1919 provided that where a highway is to be improved and where it deviates from the line of a highway already existing, as happened in this case, " the board of supervisors of the county where such highway is located, shall acquire land for the requisite right of way prior to the advertisement for proposals." (L. 1917, ch. 261.) This land may be acquired either by purchase or by condemnation.   In the present case it appears that certain parcels required for this highway had not been so acquired and were not acquired until some time after the contractor entered upon the performance of his work.   Claiming he was hindered and delayed as a result, he abandoned this

contract. The courts below have held that the acquiring of all necessary land by the supervisors was a condition precedent to the advertisement for proposals by the State, to the acceptance of proposals and to the execution of the contract. The contract with Karr was, therefore, void. Consequently neither he nor his surety could be held liable for his failure to complete the same.

Doubtless this is so if the acquisition of the right of way is in fact a condition precedent to the advertisement for proposals and to all subsequent proceedings. If that were the intention of the Legislature we have but to enforce it. But it is purely a question of intention. And the line between mandatory and directory statutes cannot be drawn with precision. General principles there may be. Perhaps as well as anywhere they are stated in Maxwell on the Interpretation of Statutes at page 649 *et seq.* " It has been said that no rule can be laid down for determining whether the command is to be considered as a mere direction or instruction involving no invalidating consequence in its regard, or as imperative, with an implied nullification for disobedience, beyond the fundamental one that it depends upon the scope and object of the enactment. It may, perhaps, be found generally correct to say that nullification is the natural and usual consequence of disobedience; but the question is in the main governed by considerations of convenience and justice, and when that result would involve general inconvenience or injustice to innocent persons, or advantage to those guilty of the neglect, without promoting the real aim and object of the enactment, such an intention is not to be attributed to the Legislature. * * * Where the prescriptions of the statute relate to the performance of a public duty; and to invalidate acts done in neglect of them would work serious general inconvenience or injustice to persons who have no control over those intrusted with the duty, without promoting the essential aims of the Legislature,

such prescriptions seem to be generally understood as mere instructions for the guidance and government of those on whom the duty is imposed, or, in other words, as directory only. The neglect of them may be penal, indeed, but it does not affect the validity of the act done in disregard of them." The distinction is also illustrated in *Hunt* v. *Wimbledon Board* (48 L. J. C. P. 207) and in *Nowell* v. *Worcester* (23 L. J. Ex. 139). In these cases local boards of health were authorized by the English Public Health Act of 1848 to enter into contracts. These contracts if amounting to over £10 were to be sealed with the seal of the board. It was held that this provision was mandatory. It was a power given to the board by statute and it could only be exercised in accord with its terms. But the statute further provided that " Every such contract is to be binding provided * * * that before contracting for work the board obtains from its surveyor a written estimate of the probable expense." This clause was held to be directory and not a condition precedent. As to the first clause a party might know whether or not the seal was absent. But as to the second he had no facility for learning if the board had consulted a surveyor.

With the peculiar language used, however, in every statute, in view of the special objects to be subserved and the special evils to be remedied, it is useless to hope for a controlling precedent. As best we may we must seek the legislative design having in mind the public policy to be promoted and the results that would follow one or the other conclusion.

Here we find the provision in question in a section wholly divorced from those fixing the method by which contracts shall be let. It is an amendment of a provision clearly directory providing for the acquisition of title before the work actually begins. It is not made expressly a condition precedent as might easily have been done. The contract is let by State officials. Necessary rights

of way are acquired by the county supervisors. The latter are not required to furnish any statement or certificate as the basis for action by the former.

The results that would follow from an interpretation of this statute as mandatory would be serious. Both the State and the contractor must then search the title of every parcel of property necessary for the road and must satisfy themselves that a valid right to build it over each has been acquired prior to the advertisement. If the right as to any one of them, no matter how small, has not been acquired either the State or the contractor may abandon the work at any time. Even were the work completed the contractor might not recover from the State under the contract. If he could recover at all it must be on some theory of *quantum meruit* which might result in his receiving less or more than the amount specified in the contract.

We cannot, in view of these considerations, hold this statute to be mandatory. Largely, in our opinion, it was intended to provide for action by the local officials for the benefit both of the State and the contractor. Both were to be assured before the contract was made that the work might proceed without unreasonable interference or delay.

A decision to this effect, however, does not leave either party without remedy for a breach of the official duty imposed on the supervisors. To the State they may be personally liable for any damages caused by their neglect if there be neglect. As to the contractor, when the State enters into an agreement with him and directs him to proceed with the work, he may assume that he is entitled to complete the highway without substantial interference or interruption. If he is materially impeded because the right of way has not been acquired, he may at times abandon his contract. Not always. It is a matter of degree. If before he

begins actual work title is acquired; if lack of title does not seriously interfere with its prosecution; if upon notice to the State the defect is promptly remedied, he may not. He may not precipitately abandon the work without a reasonable opportunity of the State to make good. He is to be held strictly to the obligation to make plain the obstruction from which he suffers before he may rescind the contract.

The judgments of the courts below must be reversed and a new trial granted, with costs to abide the event. On this trial the issue will be whether or not because of the failure to perform the statutory duty imposed upon the officials the contractor was so impeded in his work that he was reasonably entitled to abandon his contract and in fact did abandon it for that reason.

HISCOCK, Ch. J., CARDOZO, POUND, CRANE and LEHMAN, JJ., concur; McLAUGHLIN, J., not voting.

Judgments reversed, etc.